## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Joseph Acosta, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge and belief:

## INTRODUCTION AND AGENT BACKROUND

1. Your Affiant, Joseph Acosta, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, with the meaning of Title 18, United States code, Section 3051, that is an officer of the United States empowered by law with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States.

2. Your affiant has been an ATF Special Agent for approximately two (2) years.  Your affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking, and conspiracy laws.  Your Affiant has participated in approximately twenty (20) federal firearms investigations as an ATF Special Agent in which firearms used in violation of federal law have been recovered.  Your affiant also conducted and/or participated in such investigations as a sworn police officer in the State of Illinois.  Prior to becoming an ATF Special Agent, your affiant was employed as a police officer with the Naperville Police Department, Illinois, for approximately six (6) years.  While at the Naperville Police Department, your affiant assisted in the apprehension and investigation of individuals involved in serious violent crime to include but not limited to, Robbery, Aggravated Assault, Narcotics Crimes, Unlawful Possession of Dangerous Weapons, and Unlawful Discharge of Firearms.  Your affiant has written and participated in the execution of federal search warrants and arrest warrants involving firearms.

3. Your Affiant has received training and instruction related to firearms trafficking laws.  Your Affiant also works with other law enforcement officers with decades of firearms trafficking investigation experience and your Affiant benefits from their knowledge. Your Affiant investigates firearms trafficking in the normal course of his duties and is familiar with the facts of this case.

## AFFIDAVIT PURPOSE

4. This affidavit is submitted to support a criminal complaint and application for arrest warrant for and against Mamadou KOUYATE.

5. Your Affiant submits that probable cause exists that on or about January 19, 2019, in the State and District of Colorado, the defendant, MAMADOU KOUYATE, in connection with the acquisition of a firearm from 1st Liberty Firearms located at 5700 Lincoln St., Denver, Colorado 80216, a licensed firearms dealer within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to 1st Liberty Firearms, which statement was intended and likely to deceive 1st Liberty Firearms as to a fact material to the lawfulness of such acquisition of the firearm to MAMADOU KOUYATE under Chapter 44 of Title 18, in that MAMADOU KOUYATE did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms

     Transaction Record, stating that he was the actual buyer of the firearm, when in fact as MAMADOU KOUYATE then knew, he was not the actual buyer of the firearm; in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

6. Because this affidavit is submitted only to obtain a criminal complaint and arrest warrant, I have set forth only those facts I believe are necessary to establish probable cause for the above-mentioned offense in paragraph five.

7. The facts in this affidavit come from my personal observations, interviews, records, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

## INVESTIGATION

### *Kouyate Purchases 13 9mm Pistols From 1st Liberty Firearms*

8. On January 19, 2019, Mamadou KOUYATE purchased thirteen (13) 9mm pistols from 1st Liberty Firearms in Denver, Colorado.  1st Liberty Firearms is a federal firearms licensee ("FFL") (FFL # 58406808).

9. Specifically, the thirteen pistols included:  (1) a Glock, model 17, 9mm semi-automatic pistol, bearing serial number BKFL124; (2) a Glock, model 17, 9mm semi-automatic pistol, bearing serial number BHSL453; and, (3) a Beretta, model PX4 Storm, 9mm semi-automatic pistol, bearing serial number PX346564.

10. At the time of purchase, KOUYATE completed ATF Form 4473, a required form for all firearm transactions involving an FFL.  Your Affiant is familiar with ATF Form 4473 given his training and experience.  Your Affiant retrieved and reviewed a copy of the ATF Form 4473 KOUYATE filled out during the January 19, 2019 purchase of thirteen 9mm pistols from 1st Liberty Firearms.

11. Question 11a of ATF Form 4473 asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person"**.  KOUYATE checked "Yes" in response to this question.

### *Kouyate's Wife Is Detained At Minneapolis Airport With Three 9mm Pistols Kouyate Purchased From 1st Liberty Firearms*

12. On January 25, 2019 (*six days after KOUYATE purchased the 13 9mm pistols*), law enforcement officers detained Rama CAMARA, wife of KOUYATE, at the Minneapolis Airport as she was traveling from Minneapolis to Paris en-route to her final destination: Mali, Africa.

13. Customs and Border Protection ("CBP") personnel detained CAMARA after three (3) pistols were located in her checked luggage.  The pistols recovered in CAMARA's luggage were the same pistols identified in paragraph 9 of this affidavit, *i.e.*, they were pistols that KOUYATE purchased from 1st Liberty Firearms on January 19, 2019.

14. CBP officers interviewed CAMARA regarding the pistols located in her luggage.

15. CAMARA stated the guns belonged to her husband, KOUYATE. She stated KOUYATE had purchased the guns the week prior to her trip. She stated KOUYATE instructed her to leave the guns with her brother-in-law at the airport in Bamako, Mali, Africa. She stated the guns were for her brother-in-law to use for protection because Mali is a very dangerous country.

### *ATF Agents Interview Owner of 1st Liberty Firearms*

16. On June 23, 2020, ATF agents interviewed the owner of 1st Liberty Firearms in Denver, Colorado. As a result of the interview, Agents learned that KOUYATE purchased one hundred six (106) firearms from 1st Liberty Firearms from January 2018 to May 2019.

17. Agents asked the owner about transactions with KOUYATE. The owner remembered KOUYATE. The owner stated that KOUYATE told him that his intent in purchasing firearms was to take the firearms to Africa and that he was trying to "get into the gun business in Africa."

18. KOUYATE asked the owner if he could ship firearms to Africa for him. The owner told KOUYATE he could not do that.

### *Kouyate's Other 9mm Pistol Purchases from 1st Liberty Firearms (Totaling 106 9mm Pistols)*

19. On January 27, 2018, KOUYATE purchased five (5) 9mm pistols and paid a total amount of $2,787.11 for this transaction.

20. On March 14, 2018, KOUYATE purchased eleven (11) 9mm pistols and paid a total amount of $6,225.63 for this transaction.

21. On June 20, 2018, KOUYATE purchased fifteen (15) 9mm pistols and paid a total amount of $8,200.00 for this transaction.

22. On October 2, 2018, KOUYATE purchased twenty (20) 9mm pistols and paid a total amount of $12,407.90 for this transaction.

23. On November 20, 2018, KOUYATE purchased sixteen (16) 9mm pistols and paid a total amount of $9,365.53 for this transaction.

24. On November 23, 2018, KOUYATE purchased one (1) 9mm pistol and paid a total amount of $569.00 for this transaction.

25. On January 19, 2019, KOUYATE purchased thirteen (13) 9mm pistols and paid a total of $8,117.36 for this transaction (*transaction at issue in this complaint*).

26. On March 27, 2019, KOUYATE purchased seven (7) 9mm pistols and paid a total of $4,508.29 for this transaction.

27. On April 18, 2019, KOUYATE purchased four (4) 9mm pistols and paid a total of $2,412.86 for this transaction.

28. On May 2, 2019, KOUYATE purchased fourteen (14) 9mm pistols and paid a total of $8,289.39 for this transaction.

29. In total, KOUYATE purchased one hundred six (106) firearms from January 2018 through May 2019 from 1st Liberty Firearms and paid a total of $62,883.07 for these firearms.

*Camara's Immigration Interview*

30. On October 9, 2020, a routine interview of CAMARA was conducted by United States Citizenship and Immigration Services.

31. The interview was conducted as part of CAMARA's application to become a United States citizen.

32. CAMARA had her attorney present for this interview.

33. During the interview, CAMARA was asked by the Immigration Officer conducting the interview about the January 25, 2019 incident at the Minneapolis airport. CAMARA stated she was aware that the guns were in her luggage at the time of her trip. She stated the guns belonged to her husband, KOUYATE. KOUYATE purchased the guns and gave them to her.

34. When asked who the guns were to be given to in Mali, she stated, "This was for anybody." KOUYATE had told her to take the guns to Mali for protection. She stated this was the only time she had attempted to transport guns to Mali.

35. She does not have a license to export firearms. She stated she was unaware it was illegal to transport firearms out of the United States without a license. She did not apply for a license or seek permission from the United States government to export firearms out of the country.

36. CAMARA was under oath for this interview and a Record of Sworn Statement was recorded. CAMARA signed the Record of Sworn Statement swearing that the statement was true and correct.

*Kouyate's Immigration Interview*

37. Also on October 9, 2020, an interview of KOUYATE was conducted by United States Citizenship and Immigration Services as part of CAMARA's application to become a United States Citizen.

38. KOUYATE was interviewed after CAMARA.

39. KOUYATE also had his attorney present for the interview. The attorney was the same attorney CAMARA had present for her interview.

40. During the interview, KOUYATE was asked by the Immigration Officer conducting the interview about the January 25, 2019 incident at the Minneapolis airport. KOUYATE stated he purchased the guns that were recovered in CAMARA's luggage and that CAMARA had "nothing to do with it…I take responsibility 100%". He further stated that he told CAMARA to give the guns to his brother at the airport in Bamako, Mali.

41. KOUYATE stated that Mali is a dangerous place and that the firearms were to be used for protection.

42. KOUYATE stated he has exported at least one additional (1) firearm out of the country himself by putting it in his checked luggage and on an airplane but he could not remember the date that he did this.

43. KOUYATE stated he was trying to start a gun club in Mali and that was the purpose for exporting the guns.

44. Neither KOUYATE nor CAMARA have a license to export firearms.

45. KOUYATE stated he did not know it was illegal to transport firearms out of the country.

46. KOUYATE also stated that he collects a total of approximately $3,033.00 from Social Security Disability and Worker's Compensation per month.

47. KOUYATE was under oath for this interview and a Record of Sworn Statement was recorded.  KOUYATE signed the Record of Sworn Statement swearing that the statement was true and correct.

### *Firearms & Mali*

48. On May 4, 2020, your Affiant conducted a phone interview of a United States State Department Regional Security Officer ("RSO") assigned to the United States Embassy in Bamako, Mali, Africa.  The following information was gleaned during that interview.

49. The country of Mali has been in a state of turmoil for decades with jihadists and armed rebel groups frequently committing acts of terrorism and violence throughout the nation.

50. The violence has gotten worse in recent years due to the inability of the Mali government to protect its citizens.

51. The 9mm pistols that KOUYATE purchased are in high demand among jihadist groups as well as rebel groups.

52. The 9mm firearms that KOUYATE purchased could be re-sold in Mali for over $800.00 each on the black market or $1,600.00 on the legitimate market.

### *Disparity Between Kouyate's Income and the Purchase of 9mm Pistols*

53. Your Affiant is aware that KOUYATE collects social security payments.

54. Specifically, your Affiant is aware that KOUYATE's social security disability and worker's compensation is approximately $36,396.00 annually. *See* paragraph 46.

55. Your Affiant is aware that KOUYATE collected no other income in the State of Colorado from 2017-2020 according to Colorado Department of Labor records.

56. Your Affiant is not definitively sure as to whether KOUYATE collected the approximate $36,396.00 in social security payments during 2018 and 2019.  Assuming KOUYATE did collect such payment, KOUYATE purchased 106 9mm pistols for $62,883.07 between

January 2018 and May 2019 without any other source of income (*at least any other <u>reported</u> income to the Colorado Department of Labor*).

57. Your Affiant has training and experience in firearms trafficking investigations.

58. Your Affiant is aware that firearms traffickers repeatedly purchase many firearms of a similar make and model, as is the case here: 9mm semi-automatic pistols.

59. Your Affiant submits that based on his training and experience, this disparity between KOUYATE's income and his purchase of over 106 9mm pistols within a 16 month period (*January 2018 to May 2019*) is indicative of firearm trafficking.

60. Your Affiant further submits that this indicates that KOUYATE knew, at the time he purchased the 13 firearms from 1st Liberty Firearms on January 19, 2019, that he was not the transferee and the 9mm pistols were not purchased for himself.

*Materiality of Kouyate's Statement on the January 19, 2019 ATF Form 4473*

61. Your Affiant has knowledge and training regarding ATF Form 4473.

62. Your Affiant is aware that firearm purchasers must fill out the form prior to purchasing a firearm from an FFL.

63. Your Affiant is aware that 1st Liberty Firearms is an FFL (FFL # 58406808).

64. Your Affiant is aware that question 11a of ATF Form 4473 asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.**"

65. Your Affiant knows that question 11a is a disqualifying question, *i.e.*, if a firearm purchaser answers "No" to question 11a, the purchase is cancelled and the FFL cannot sell the firearm to the purchaser.

66. Because question 11a is a disqualifying question, your Affiant submits that KOUYATE's statement ("Yes") on the January 19, 2019 ATF Form 4473 was material to the purchase of the 13 9mm pistols.

*Kouyate's Answer to Question 11a on the January 19, 2019 ATF Form 4473 Was False, Fictitious, and was Intended to Deceive*

67. Based on information obtained in this investigation, including but not limited to KOUYATE purchasing 106 9mm pistols within sixteen months and the disparity between his income and the total purchase price of the 9mm pistols, your Affiant submits that KOUYATE's January 19, 2019 statement that he was the transferee was false, fictitious, and intended to deceive 1st Liberty Firearms.

68. Your Affiant further submits that based on the evidence obtained in this investigation, KOUYATE knew that his answer to question 11a was false and fictitious when he filled out the January 19, 2019 ATF Form 4473.

## CONCLUSION

69. Based on the aforementioned information, your Affiant submits that probable cause exists that on or about January 19, 2019, in the State and District of Colorado, the defendant, MAMADOU KOUYATE, in connection with the acquisition of a firearm from 1st Liberty Firearms located at 5700 Lincoln St., Denver, Colorado 80216, a licensed firearms dealer within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious written statement to 1st Liberty Firearms, which statement was intended and likely to deceive 1st Liberty Firearms as to a fact material to the lawfulness of such acquisition of the firearm to MAMADOU KOUYATE under Chapter 44 of Title 18, in that MAMADOU KOUYATE did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, stating that he was the actual buyer of the firearm, when in fact as MAMADOU KOUYATE then knew, he was not the actual buyer of the firearm; in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

70. As such, your Affiant respectfully requests that the Court issue a criminal complaint and a corresponding arrest warrant for and against Mamadou KOUYATE.

I, Joseph Acosta, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, hereby depose and state that the above-mentioned information is true to the best of my information, knowledge and belief.

*/s/ Joseph Acosta*
Joseph Acosta
ATF Special Agent

**Affidavit reviewed and submitted by Jason St. Julien, Assistant United States Attorney.**

Sworn to and subscribed before me this __16th__ day of October, 2020.

_____
United States Magistrate Judge
District of Colorado