IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-MJ-00167-MEH

UNITED STATES OF AMERICA,

Plaintiff,

v.

MAMADOU KOUYATE,

Defendant.

---

## ORDER ON PRELIMINARY HEARING DISMISSING COMPLAINT AND DISCHARGING THE DEFENDANT

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter came before the Court on December 1, 2020 for a preliminary hearing to determine whether there exists probable cause to believe that the Defendant committed the crime of making a false statement in connection with the purchase of a firearm from a federally licensed firearm dealer in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Section 922(a)(6) makes it unlawful "for any person in connection with the acquisition or attempted acquisition of any firearm . . . from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness of the sale . . . of such firearm."

On December 1, 2020, I took testimony and heard argument by videoconference from the United States and Defense counsel on the issue of probable cause. At the conclusion of the hearing, I requested supplemental briefing on the issue of probable cause and the specifics of the statements made on the firearm transaction form filled

out by Defendant in connection with the purchase of firearms. The United States filed its brief on December 7, 2020. Dkt. #18. Defendant filed his responsive brief on December 11, 2020. Dkt. #19.

**Evidence Purporting to Establish Probable Cause**

Defendant is charged in connection with the purchase of firearms on January 19, 2019 from 1st Liberty Firearms located at 5700 Lincoln Street, Denver, Colorado. The criminal complaint alleges that, on that date, Defendant filled out an ATF Form 4473, Firearm Transactions Record, stating that he was the actual buyer of the firearm when, in fact, he knew he was not the actual bona fide buyer of the firearm.

The Government presented Agent Lee Schoenike as its only witness at the preliminary hearing. The facts adduced by his testimony were almost exclusively those contained in the Affidavit in Support of Complaint and Arrest Warrant previously filed with the Court. *See* Dkt. ##1 & 1-1. The Affidavit in support of the Complaint recites that on January 19, 2019, Defendant purchased thirteen 9mm pistols from 1st Liberty Firearms. 1st Liberty is a federal firearms licensee. Dkt. #1-1 at ¶ 8. The purchase included, among other weapons, two Glock model 17s with identifiable serial numbers and a Beretta model PX4 Storm with an identifiable serial number. *Id.* at ¶ 9.

In making his purchase, Defendant completed ATF Form 4473, a required form for all firearm transactions involving a federal firearms licensee. Question 11a of ATF Form 4473 asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person". Defendant checked "Yes" in response to this question. *Id.* at ¶¶ 10–11.

Six days after Defendant's purchase of the thirteen 9mm pistols, Defendant's wife was detained at the Minneapolis Airport while in route to her final destination in the country of Mali, Africa. Located in her luggage were the two Glock pistols and Beretta pistol with identifiable serial numbers purchased by her husband on January 19, 2019. *Id.* at 12–13. Defendant's wife told Customs and Border Patrol agents that the guns belonged to her husband and he had instructed her to leave the guns with his brother at the airport in Bamako, Mali. Defendant's wife told the agents that the guns were for her brother-in-law to use for protection because Mali is a dangerous country. *Id.* at ¶ 15.

Defendant had purchased one hundred and six (106) firearms from 1st Liberty Firearms over the period from January 2018 through May 2019. *Id.* at ¶ 16. Defendant had told the owner that his intent in purchasing the firearms was to take them to Africa and he was trying "to get into the gun business in Africa." Defendant asked the owner of 1st Liberty Firearms if he could ship firearms to Africa for him, but the owner said he could not. *Id.* at ¶¶ 17–18. Defendant's prior purchases of handguns included buying up to twenty guns at one time and paying tens of thousands of dollars for the guns, collectively. *Id.* at ¶¶ 19–29.

On October 9, 2020, United States Citizenship and Immigration Services conducted an interview of Defendant's wife in connection with her application to become a United States citizen. During the interview she was asked about the guns found in her luggage and asked to whom the guns were to be given in Mali. She responded, "This was for anybody." Defendant had told her to take the guns to Mali for protection. *Id.* at ¶¶ 30–34. This answer, given under oath, was different from the answer she had provided at the airport that the guns were for her brother-in-law.

Also, on October 9, 2020, Defendant was himself interviewed by the United States Citizenship and Immigration Services. Defendant took full responsibility for giving the guns to his wife. Defendant stated that he had instructed his wife to give the guns to his brother at the airport in Mali. Defendant said that Mali is a dangerous place and the firearms were to be used for protection. He said that he had exported at least one other firearm out of the country by putting in his checked luggage. Defendant stated that he was trying to start a gun club in Mali and that was the purpose for exporting the guns. *Id.* at ¶¶ 40–43.

During this interview, the Defendant stated that he makes $3,033.00 from Social Security Disability and Worker's Compensation per month. *Id.* at ¶ 46. Based on Colorado Department of Labor records, the Defendant collected no other reported income in the State of Colorado from 2017–2020. *Id.* at ¶¶ 53–55.

According to a United States State Department Regional Security Officer assigned to the United States Embassy in Bamako, Mali, the country of Mali has been in a state of turmoil for decades with jihadists and armed rebel groups frequently committing acts of terrorism and violence throughout the nation. 9mm pistols of the type Defendant purchased are in high demand among jihadist groups as well as rebel groups. The 9mm firearms purchased by the Defendant and sent with his wife could be re-sold in Mali for over $800.00 each on the black market or $1,600.00 each on the legitimate market. *Id.* at ¶¶ 48–52.

Firearms traffickers are known to make multiple purchases of similar model firearms. The disparity between Defendant's reported and known income and his

purchase of over 106 9mm pistols within a sixteen-month period is consistent with firearms trafficking. *Id.* at ¶¶ 57–60.

The United States presented the above evidence to support the conclusion that there is probable cause to believe that, when Defendant made his purchase of thirteen pistols on January 19, 2020, the guns were not purchased for himself but were in fact intended to be transferred to someone else, and therefore he made a false statement on the ATF form.

**Arguments of the Parties**

The gravamen of the offense with which the Defendant is charged is making a false statement. The false statement is made at the time of purchase. *See Abramski v. United States*, 573 U.S. 169 (2014) ("There, he filled out form 4473, falsely checking 'Yes' in reply to Question 11.a. – that is, asserting he was the 'actual transferee/buyer' when, according the form's clear definition, he was not."). According to the United States, the question is whether at the time of the purchase, Defendant was purchasing the firearm for himself, or instead for another person, regardless of whether he used his own money. Dkt. #18 at 2. In the United States' view, when Defendant purchased the thirteen firearms on January 19, 2019 and stated that he was the actual buyer, there is probable cause to believe that he was not the actual buyer, but was intending to transfer them to someone else or sell them. *Id.* at 2–3.

By contrast, Defendant argues that his situation is very different from the one presented in *Abramski*, where that defendant was clearly a straw buyer for his uncle, who had provided the funds for the purchase. According to Defendant, the statute requiring affirmation that the purchaser is a "actual" or bona fide "buyer" is not meant to

5

control the secondary market—what happens to the gun after it is purchased. As I understand Defendant's theory, Defendant could have purchased the guns with the intent of selling or transferring them to a third party sometime in the future. So long as the potential future purchaser or transferee was not known at the time the guns were initially purchased, Defendant was still a bona fide buyer and did not make a false statement when he answered "Yes" to the question, "Are you the actual transferee/buyer of the firearm(s) listed on this form?"

The warning on the form, "You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person," did not apply to Defendant because he was not "acquiring the firearms on behalf of" any identifiable other person. Instead, he was arguably acquiring them with the intention of reselling them at some indefinite time in the future but without any particular transferee in mind. According to Defendant's written submission, while he may have committed other uncharged crimes with respect to these guns (for example, violation of laws regarding the unlicensed export of firearms), there is no evidence that he committed the crime of which he is charged, namely, making a false statement in connection with the purchase of firearms. *See* Dkt. #19 at 3 ("Whatever other offenses he may have been committing, making a false statement to a federal licensed dealer in violation of § 922(a)(6) was not one of them.").

In response, the United States' position is that if the firearms were purchased "with the intention of selling them," no matter when or to whom, then Defendant violated § 922(a)(6) because he was not the actual transferee/buyer of the firearm. Dkt. #18 at 3.

**Analysis**

Here, the reasonable inference from the evidence presented at the preliminary hearing is that Defendant was engaged in the unlicensed exportation and trafficking of firearms to Mali. Defendant asked the owner of 1st Liberty Firearms to help in the shipping of the guns to Mali, confirming this was his true intent. The Court does not credit the explanation that Defendant was interested starting a gun club in Mali. Indeed, I question whether a gun club (any gun club) would have more than one hundred examples of a near identical model of pistol. What is much more likely is that the guns were intended for resale at a profit in Mali, where such guns are in high demand. That said, the Defendant is not charged with the unlawful trafficking or export of firearms. Instead, he is charged with falsely stating on Form 4473 that he is the "actual transferee/buyer" of the guns. There was no evidence presented as to whom the guns would be sold in Mali. According to Defendant's wife, they were to be given to his brother at the airport and could be for "anybody."

The authorities cited by the Parties shed only partial light on the question whether a person purchasing a firearm with the intention of reselling it at a profit at some indefinite time in the future, to some as-yet unidentified buyer, is an "actual transferee/buyer." The Firearms Transaction Record Form 4473 that Defendant completed has an explanatory instructions section, which reads as follows:

> Question 21.a.[1] Actual Transferee/Buyer: For purposes of this form, a person is the actual transferee/buyer if he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself. (e.g.,

---

[1] It was explained at the preliminary hearing that ATF has updated its forms and the new version of ATF Form 4473 changed the number of the questions, with question No. 11, which Defendant answered, now renumbered to No. 21. It was nevertheless stipulated at the hearing that, with the exception of the number change, the relevant contents of the new version of the form is substantially identical to the form that Defendant signed.

7

> redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm.
>
> EXAMPLES: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith (who may or may not be prohibited). Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is NOT THE ACTUAL TRANSFEREE/BUYER of the firearm and must answer "no" to question 21.a. The licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown buys the firearm with his own money to give to Mr. Black as a gift (with no service or tangible thing of value provided by Mr. Black), Mr. Brown is the actual transferee/buyer of the firearm and should answer "yes" to question 21.a. However, the transferor/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (h), (n), or (x).

This instruction section provides no clarity on the question whether a purchase with the intent to resell sometime in the future to some unknown buyer renders the purchaser "not the actual transferee/buyer" of the firearms.

The *Abramski* decision provides an indirect answer to the question. That case involved a classic "straw" buyer—the former police officer who offered to buy a Glock 19 for his uncle using a law enforcement discount. Abramski got the purchase money by check from his uncle, bought the gun, deposited the check and delivered the gun to his uncle. Abramski had answered "yes" to the "actual transferee/buyer" question, when his intention all along was to pass the gun (purchased with the uncle's money) along to his uncle. 573 U.S. at 175. The *Abramski* defendant's argument had been that because he was lawfully entitled to buy the gun, and his uncle was also lawfully entitled to buy or possess the gun, there was no material misrepresentation when he falsely answer "yes" to the "actual buyer" question. The *Abramski* case did not involve the question whether

8

a person buying a gun, ultimately for resale, but without any presently identified buyer and no set time for ultimate disposition of the weapon, is making a false statement in answering "yes" to this same question.

The *Abramski* case's analysis of the straw buyer question does teach how one should look at the statute in interpreting the language of the ATF Form:

> In answering that inquiry, we must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, "structure, history, and purpose." *Maracich v. Spears*, 570 U.S. ——, ——, 133 S. Ct. 2191, 2209, 186 L. Ed. 2d 275 (2013). All those tools of divining meaning—not to mention common sense, which is a fortunate (though not inevitable) side-benefit of construing statutory terms fairly—demonstrate that § 922, in regulating licensed dealers' gun sales, looks through the straw to the actual buyer.
>
> The overarching reason is that Abramski's reading would undermine—indeed, for all important purposes, would virtually repeal—the gun law's core provisions. As noted earlier, the statute establishes an elaborate system to verify a would-be gun purchaser's identity and check on his background. *See supra*, at 2263. It also requires that the information so gathered go into a dealer's permanent records. See supra, at 2263–2264. The twin goals of this comprehensive scheme are to keep guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes. *See Huddleston*, 415 U.S., at 824, 94 S. Ct. 1262; supra, at 2263–2264. And no part of that scheme would work if the statute turned a blind eye to straw purchases—if, in other words, the law addressed not the substance of a transaction, but only empty formalities.

*Abramski*, 573 U.S. at 179–180.

While § 922 may be part of a comprehensive scheme to keep guns out of the hands of criminals, Defendant in this case was not one of those prohibited people. Neither was he a straw buyer. There was no evidence presented at the preliminary hearing that the purchase money for the weapons did not originate with him. And based on the evidence presented at the preliminary hearing, although Defendant may have had an intention of transferring the guns by resale at some point, there is no evidence

9

that, at the time he was buying them, he knew to whom the guns might eventually be sold or when those sales might take place.

The *Abramski* case does explain that Congress, in passing § 922, chose not to regulate "beyond the initial point of sale." *Id.* at 185. And the Court, citing Abramski's argument, also recognized that because "the law mostly addresses sales made by licensed dealers, a purchaser can (within wide limits) subsequently decide to resell his gun to another private party." *Id.* Indeed, the Court majority specifically agreed that "Congress decided to regulate dealers' sales, while leaving the secondary market for guns largely untouched." *Id.* Thus, the Supreme Court decision in *Abramski* appears to reject the United States' position in this case that if Defendant purchased "the firearms with intention of reselling them," he made a false statement in answering "yes" to question 11.a. *See also id.* at 199–200 ("*Guns Intended for Resale*. The Government admits that the man at the counter is the true purchaser even if he immediately sells the gun to someone else. Tr. of Oral Arg. 34–35. And it appears the Government's position would be the same even if the man at the counter purchased the gun with the intent to sell it to a particular third party, so long as the two did not enter into a common-law agency relationship.") (Scalia, dissenting).

In this case, based on the sheer quantity of weapons involved, and Defendant's admission he wanted to get into the "gun business," the evidence is strong that Defendant was engaged in the purchase of weapons for resale, likely in Mali. But the question on the ATF form does not ask about an intended subsequent resale, which the Supreme Court in *Abramski* indicated would nevertheless justify a "yes" answer on the

critical question on the ATF form. The explanatory instruction language on the ATF form provides no guidance whatsoever regarding subsequent resales.

Another rule of criminal statutory interpretation applies here: the rule of lenity. It is a "familiar principle" that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Skilling v. United States*, 561 U.S. 358, 410 (2010). "The rule of lenity seeks to ensure legislatures, not prosecutors, decide the circumstances when people may be sent to prison. It seeks to ensure, too, that if a legislature wishes to attach criminal consequences to certain conduct—to deprive persons of their property, liberty, or even lives—it provides fair warning." *United States v. Rentz*, 777 F.3d 1105, 1113 (10th Cir. 2015). The rule of lenity has been applied by the Tenth Circuit in firearms offenses. *Id.*

In this instance, four points lead me to a conclusion. First, there was no intention by Congress with this statute to regulate the secondary gun market. Second, the ATF instructions on the ATF Form 4473 fail to give any guidance as to whether a subsequent potential resale of a gun makes a purchaser something other than the "actual transferee/buyer." The form is ambiguous on this point. Third, the United States in oral argument in *Abramski* conceded that a gun buyer who buys a gun with the intention to resell nevertheless qualifies as an actual buyer. And fourth, the reasonable inference from the evidence presented at the preliminary hearing was that Defendant purchased the guns himself for resale in Mali.

Notwithstanding the evidence that Defendant purchased these weapons for resale in Mali, I therefore conclude that the United States has not demonstrated probable cause to believe that Defendant made a false statement when Defendant

affirmed on the ATF Form 4473 that he was the actual transferee/buyer of the guns. There is no probable cause to believe Defendant committed the charged offense. Based on the evidence I have seen, there were likely other offenses committed in connection with the purchase and attempted export of these handguns. But the Government has not shown probable cause to believe that making a false statement to a licensed firearms dealer in violation of § 922(a)(6) was one of them.

**Conclusion**

For the foregoing reasons, pursuant to Federal Rule of Criminal Procedure 5.1(f), there being no finding of probable cause that the charged offense has been committed, I hereby **ORDER THE COMPLAINT DISMISSED AND THE DEFENDANT DISCHARGED.**

Date:  December 16, 2020              _____
       Denver, Colorado               N. Reid Neureiter
                                      United States Magistrate Judge